## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

HUNTINGTON NATIONAL BANK :
41 South High Street :
Columbus, Ohio 43215 :
 : Case No.  2:12-cv-1035
  Plaintiff, :
 : Judge
v. :
 : Magistrate Judge
GUISHARD, WILBURN & SHORTS, LLC :
175 Carnegie Pl. Ste. 117 :
Fayetteville, GA 30214-7903, : **COMPLAINT FOR**
 : **DAMAGES AND INJUNCTIVE**
 : **RELIEF**
ALLEN PENDERGRASS :
441 Highway 279 :
Fayetteville, GA 30214, :
 : **JURY DEMAND ENDORSED HEREIN**
JOSEPH GRAY :
106E Ticonderoga Drive :
Westerville, OH 43081 :
 :
CLYDE PARKS :
1423 Madison Avenue :
Columbus, OH 43205 :
 :
NATHAN PENDERGRASS :
441 Highway 279 :
Fayetteville, GA 30214 :
 :
And :
 :
JOHN DOES 1-10, :
[Address Unknown] :
 :
  Defendants. :

## PRELIMINARY STATEMENT

(1) This case stems from an interstate conspiracy whereby Defendants acquired stolen

federal checks, forged the endorsements of unsuspecting individuals, deposited the stolen checks

1

at Huntington National Bank ("Huntington") branch locations in Central Ohio, and converted the funds for their personal benefit.

(2)     Defendant Guishard, Wilburn & Shorts, LLC ("GWS"), and the individual Defendants have deposited 51 federal checks into an account (the "GWS Account") held at Huntington.  Upon information and belief, Huntington believes that these 51 federal checks were likely stolen.  The deposits from these federal checks totaled $806,358.51.

(3)     After depositing the stolen checks, Defendants Allen Pendergrass, Mr. Gray, and Nathan Pendergrass made repeated withdrawals from the GWS Account, totaling over $450,000.00.

(4)     To date, Huntington has received 27 reclamation claims for federal checks deposited in the GWS Account.  "Reclamation" is a process whereby the payee of a federal check can claim that she never received the payment which was converted by others through a bank or financial institution.  Through the reclamation process, the federal government demands that a federally chartered bank repay the government for the converted funds.

(5)     In each of these reclamation claims, the original payee avers that he/she never received the check, did not endorse the check, did not give authorization to any other person to deposit the check, and did not receive any benefit from the check.  In short, these checks were stolen.

(6)     In September of 2012, Huntington requested Defendants to provide documents establishing that Defendants had authority to deposit a federal tax refund check made payable to Matthew and Carla Cain-Handte, in the amount of $194,769.00.  Defendants responded by providing Huntington with forged identification documents.

2

(7)     Subsequently, Defendant GWS and Allen Pendergrass agreed to stop all of their deposit and withdrawal activity in the GWS Account, and allowed Huntington to repay all the reclamation claims from the GWS Account.

(8)     As of this filing, Huntington has repaid from the GWS Account nineteen reclamation claims to the federal government, totaling over $169,733.65.  Eight unpaid additional reclamation claims will require Huntington to pay an additional $295,185.66 to the federal government.

(9)     Upon information and belief, Huntington now believes that the remaining federal checks deposited in the GWS Account were also likely stolen, and Defendants lacked authority to deposit those checks or convert the proceeds.  Consequently, Huntington will likely receive reclamation claims on the remaining 24 federal checks, and Huntington will be required to repay the federal government over $512,000.00.

(10)    Huntington requests this Court to issue temporary, preliminary, and permanent injunctive relief to order the Defendants not to transfer or spend the funds received from the fraud, to require Defendants to deposit such funds with the Clerk of Courts, and to issue other appropriate relief.

(11)    Huntington will likely suffer irreparable harm without the issuance of injunctive relief.  Specifically, Defendant GWS is a company without other apparent assets, and the Individual Defendants are unlikely to have sufficient funds to repay Huntington's loss.  Accordingly, without the funds converted from stolen tax refund checks, Defendants will lack sufficient money to reimburse Huntington's potential $512,000.00 loss.

3

## THE PARTIES

(12)    Plaintiff Huntington National Bank is a national banking association with its main office in Columbus, Ohio.

(13)    Defendant Guishard, Wilburn & Shorts, LLC is a Delaware company with its principal place of business in Fayetteville, Georgia.  GWS is the owner of the Account which is the subject of this action.

(14)    Defendant Allen Pendergrass, a Georgia resident, is the President of GWS.  Mr. Pendergrass received numerous payments from the GWS Account.  Upon information and belief, Allen Pendergrass is the leader of this conspiracy to acquire and deposit stolen federal checks.

(15)    Defendant Joseph Gray, an Ohio resident, is a co-conspirator in this fraud.  Mr. Gray was actively involved in the scheme by, among other things, depositing stolen federal checks, and receiving payments from the GWS Account for his personal benefit.

(16)    Defendant Clyde Parks, an Ohio resident, is a co-conspirator in this fraud.  Mr. Parks was actively involved in the scheme by, among other things, depositing stolen federal checks.

(17)    Defendant Nathan Pendergrass is co-conspirator in this fraud.  Upon information and belief, Nathan Pendergrass is a Georgia resident.  Nathan Pendergrass was involved in the scheme by, among other things, receiving funds from the GWS Account.

(18)    Defendants John Does 1-10 are unknown co-conspirators who have been actively involved in the scheme, by acquiring and depositing stolen federal checks, and/or withdrawing the funds from the GWS Account.  Their names and/or contact information could not be identified at the time of filing this action.

4

4190328v8

## JURISDICTION & VENUE

(19)    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as

Plaintiff asserts a claim arising under the laws of the United States, a civil RICO claim under 18

U.S.C. §§ 1962 & 1964.

(20)    This Court has supplemental jurisdiction over the common law and Ohio statutory

claims pursuant to 28 U.S.C. § 1367.

(21)    This Court has personal jurisdiction over the Defendants under Ohio's long-arm

statute, O.R.C. § 2307.382.  Among other things, Defendants transacted business in Ohio by

depositing stolen federal checks in Ohio at Huntington Branches in Ohio.  Defendants have also

committed acts in Ohio which have caused tortious injury, by depositing stolen federal checks in

an Ohio bank.

(22)    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because, among other

things, a substantial part of the events giving rise to the claim occurred, or a substantial part of

property that is the subject of the action is situated within this judicial district.

## STOLEN FEDERAL TAX REFUND CHECKS
## ARE DEPOSITED IN THE GWS ACCOUNT

(23)    In 2003, GWS opened an account at Huntington (the "GWS Account").  "Allen

Pendergrass, President" was the authorized signatory on the account.

(24)    Prior to the fraud, the GWS Account held a balance of $76.99.

(25)    Beginning in February 2012, fifty-one (51) federal checks were deposited in the

GWS Account.

(26)    The federal checks deposited in the GWS Account were purportedly endorsed by

the individuals to whom the federal payment was owed.  None of these individual recipients are

Ohio residents.

(27)    As of this filing, approximately $825,000.00 has been deposited in the GWS Account in 2012. Of this amount, $806,358.51 stems from the 51 stolen federal checks. Accordingly, approximately 97% of all funds deposited in the GWS Account in 2012 comes from stolen federal checks.

(28)    A complete listing of the federal checks, the date of deposit, amount of deposit, the Huntington Branch in which they were deposited, and the residence and name of the taxpayer who should have received the refund is attached hereto as **Exhibit A.** This information is expressly incorporated into the Complaint as if fully rewritten herein.[1]

## DEFENDANTS' WITHDRAWLS FROM THE GWS ACCOUNT

(29)    After depositing the stolen federal checks, Defendants made substantial withdrawals from the GWS Account, totaling over $450,000.00.

(30)    A complete listing of Defendants' withdrawals, including the payee, date of withdrawal, and amount of withdrawal, is attached hereto as **Exhibit B.** This information is expressly incorporated into the Complaint as if fully rewritten herein.

(31)    Specifically, 70 checks made payable to Allen Pendergrass were drawn on the GWS Account, totaling $435,343.20. The source of these funds was stolen federal checks.

(32)    In June and July of 2012, two checks made payable to Joseph Gray and "Alexis Gray re: Joseph Gray" were drawn on the GWS Account, totaling $16,500.00. The source of these funds was stolen federal checks.

---

[1] In addition to the Tables attached to this Complaint, Huntington will file affidavits from Huntington employees Jeffrey Braden and Latonia Sheppard contemporaneously with the Motion for TRO and Preliminary Injunction. These affidavits will attach redacted copies of applicable bank statements, cancelled checks, and reclamation requests. Redactions on these documents were necessary to protect the personal identifying information of defrauded taxpayers. The affidavits and attached exhibits are expressly referred to and incorporated into this Complaint, as if fully rewritten herein.

4190328v8

(33)     From March to July 2012, six checks made payable to Nathan Pendergrass were drawn on the GWS Account, totaling $9,100.00. The source of these funds was stolen federal checks.

(34)     Furthermore, additional large electronic debits from the GWS Account including two foreign currency exchange debits, were made in the amount $40,000.00.  However, the recipient of these funds is unknown at this time.

<b>RECLAMATION REQUESTS</b>

(35)     "Reclamation" refers to the process by which the federal government requests a bank to return funds received from the federal government.  Such payments include recurring federal benefit payments, such as social security payments, or federal tax refund checks. Reclamation claims are frequent occurrences at large banks, such as Huntington.

(36)     Reclamation claims for a federal check are initiated by an individual that has not received his or her federal check.  The individual submits a completed reclamation claim form to the IRS.

(37)     The government forwards the reclamation claim, and a copy of the cancelled check, to the bank which deposited the federal check.  Importantly, a federally chartered bank is required to return funds pursuant to a valid reclamation request irrespective of whether the financial institution is able to collect from entities that have improperly cashed the check.

<b>HUNTINGTON RECEIVED NUMEROUS RECLAMATION REQUESTS<br>RELATING TO THE GWS ACCOUNT</b>

(38)     To date, Huntington has received 27 reclamation claims relating to the GWS Account.

7

(39)    In these reclamation claims, the original payee avers that he/she never received the check, did not endorse the check, did not give authorization to any other person to deposit the check, and did not receive any benefit from the check.

(40)    Huntington has notified Defendants GWS and Allen Pendergrass of these reclamation requests.  Except as described below relating to the federal tax refund check for Matthew and Carla Cain-Handte, Mr. Pendergrass has not provided any documents indicating GWS was authorized to deposit the disputed checks, or otherwise protested the reclamation claims.

(41)    Subsequently, Defendant GWS and Allen Pendergrass agreed to stop all deposit and withdrawal activity in the GWS Account, except for Huntington's repayment of reclamation claims.

(42)    As of this filing, Huntington has returned $169,733.65 from the GWS Account to the federal government pursuant to 19 of these reclamation requests.

(43)    There are currently 8 additional reclamation claims which have not yet been paid to the federal government.  The total amount that will be repaid pursuant to these eight claims is $295,185.66.

(44)    A complete listing of the paid and unpaid reclamation requests is attached hereto as **Exhibit C.**  This information is expressly incorporated into the Complaint as if fully rewritten herein.

## ALLEN PENDERGRASS PROVIDED
## FALSE IDENTITY DOCUMENTS TO HUNTINGTON

(45)    In August of 2012, Huntington was contacted by an attorney representing Matthew and Carla Cain-Handte (the "Handtes").  The Handtes were supposed to have received a $194,769.00 federal tax refund check, which never reached them.  After contacting the IRS, the

4190328v8

Handtes learned that the check had been issued, and eventually deposited at Huntington in the GWS Account.

(46)     Huntington then requested Defendants GWS and Allen Pendergrass to present documents which authorized GWS to deposit the Handtes' federal check in the GWS Account.

(47)     On September 5, 2012, Allen Pendergrass sent via email to Huntington purported copies of Matthew Handte and "Joy" Handte's Georgia drivers' license and social security cards. Defendants also sent to Huntington a power of attorney purportedly signed by Matthew Handte.

(48)     Huntington's security department performed an analysis of the Georgia drivers' licenses and determined that they were likely forgeries.  Furthermore, the Handtes, through their counsel, asserted that they had never given identification documents to GWS or the authority to deposit the check, and that the endorsements on the check were forged.

## THE INDIVIDUAL DEFENDANTS WERE ACTIVELY INVOLVED IN THE FRAUD

(49)     Defendants Allen Pendergrass, Joseph Gray, Clyde Parks, and Nathan Pendergrass were actively involved in this interstate scheme to defraud.

(50)     Surveillance video establishes that Allen Pendergrass transacted business in the GWS Account at the Huntington Capital Square Branch.  Allen Pendergrass further received the vast majority of the funds withdrawn from the GWS Account during the relevant time period. *See* Withdrawals from GWS Account, Ex B.

(51)     Surveillance video also establishes that Joseph Gray transacted business in the GWS Account at the Huntington Capital Square Branch.  Upon information and belief, these transactions included depositing stolen tax refund checks into the GWS Account.  Furthermore, checks payable to Mr. Gray were drawn on the GWS Account.

9

(52)     Surveillance video also establishes that Clyde Parks transacted business in the GWS Account at the Huntington Eastmoor Branch.  Upon information and belief, such transactions included depositing stolen tax refund checks into the GWS Account.

(53)     Nathan Pendergrass was also involved in the fraudulent scheme.  Checks payable to Nathan Pendergrass were drawn on the GWS Account, in the amount of $9,100.00.  *See* Withdrawals from GWS Account, Ex B.  During this same time period, over $400,000.00 was deposited in the GWS Account from stolen federal tax refund checks, with only a *de minimis* amount from other sources.

## HUNTINGTON'S DAMAGES

(54)     Given the foregoing, Huntington now believes that Defendants lacked authority to acquire and negotiate any of the 51 federal tax refund checks deposited in the GWS Account.  In addition to the 25 current reclamation claims, unless the requested relief is provided by this Court, Huntington would likely be required to repay from its own funds the 24 remaining federal checks which are not yet the subject of a reclamation claim.

(55)     In response to the currently pending 27 reclamation claims, Huntington has made, or will make the following payments to the federal government.  Given the Defendants large' and repeated withdrawals from the GWS Account, there are insufficient funds remaining from the stolen federal checks to cover the pending reclamation requests.

- 19 Reclamations Already Paid -- $169,733.65
- 8 Pending Reclamations To Be Paid -- $295,185.66
- GWS Account Funds Available To Cover Reclamations -- $293,671.31
- Shortfall – ($171,238.00)

(56)     When the remaining 24 stolen federal checks are subject to future reclamation claims, or Huntington is otherwise obligated to return the funds from those stolen checks, this shortfall will increase to over ($512,000.00).

## FIRST CAUSE OF ACTION:
## FRAUD (ALL DEFENDANTS)

(57)    Plaintiff incorporates the allegations in the preceding paragraphs as if fully
rewritten herein.

(58)    Defendants made repeated false representations and/or concealments of fact, by
acquiring and depositing stolen federal tax refund checks, and forging endorsements on such
checks.  A complete listing of these checks, the dates that they were deposited at Huntington, the
Huntington Branches which received the check, and the taxpayer to whom the refund was owed,
are attached hereto as **Exhibit A**, and is expressly incorporated herein.

(59)    Individual Defendants Allen Pendergrass, Joseph Gray, Clyde Parks, and Nathan
Pendergrass assisted, conspired, and joined in the fraud, by depositing stolen tax refund checks,
forging the endorsements on those checks, and/or converting funds from the GWS Account.

(60)    Such misrepresentations or concealments of fact were material.  In short,
Huntington would not have negotiated the federal tax refund checks if it knew such checks were
stolen, that the endorsements were forged, and Defendants lacked authority to make such
deposits.

(61)    Defendants knowingly made these false representations and concealments of fact.
Defendants further intended Huntington to rely upon these false representations and
concealments of fact by depositing the checks into the GWS Account.

(62)    Defendants converted the funds from the GWS Account.  A detailed listing of
Defendants' withdrawals is attached hereto as **Exhibit B**, and is expressly incorporated herein.

(63)    Huntington justifiably relied upon the false representation and/or concealment of
fact by accepting the checks for deposit into GWS Account, and permitting Defendants to make
withdrawals from the GWS Account.

11

4190328v8

(64) As a result of the fraud, Huntington has paid reclamation claims to the federal government as set forth in **Exhibit C**, which is expressly incorporated herein.

(65) Huntington has been, and will be injured thereby, because there are insufficient funds in the GWS Account to cover the pending reclamation claims, or future requests for repayment from defrauded taxpayers. Huntington has also suffered additional damages, such as the costs of investigation and recovery.

**SECOND CAUSE OF ACTION:**
**RECOVERY UNDER THE U.C.C.**
**(ALL DEFENDANTS)**

(66) Plaintiff incorporates the allegations in the preceding paragraphs as if fully rewritten herein.

(67) Under Ohio's Uniform Commercial Code ("UCC"), a bank is entitled to seek recovery from a person who negotiates a check with a forged endorsement. *See e.g.* O.R.C. § 1303.56; *see generally* O.R.C. Chapter 1303.

(68) The federal checks deposited in the GWS Account are "checks" and "negotiable instruments" as defined by O.R.C. § 1303.03(C). A complete listing of the stolen federal checks deposited into the GWS Account is attached as **Exhibit A,** which is expressly incorporated herein.

(69) Upon information and belief, the endorsements on the federal checks were forged by Defendants.

(70) Under Ohio's U.C.C., Huntington is entitled to seek recovery from Defendants for the amount of the checks with forged endorsements, and any expenses and interest relating to recovery. *See* O.R.C. § 1303.56.

12

(71)    As set forth in **Exhibit B,** the funds from such forged checks were withdrawn from the GWS Account by the Defendants.  As such, Huntington is entitled to seek recovery of any loss from Defendants, including the expenses, such as investigation of the fraud, and any applicable interest.

**THIRD CAUSE OF ACTION:**
**CIVIL CONSPIRACY (ALL DEFENDANTS)**

(72)    Plaintiff incorporates the allegations in the preceding paragraphs as if fully rewritten herein.

(73)    Defendants engaged in a malicious combination to acquire and deposit stolen checks, and forge the endorsements on such checks.  The individual Defendants subsequently converted funds from the GWS Account.

(74)    Huntington has been, and will be injured thereby, by making reclamation payments to the federal government, or payments to the taxpayers who should have received the tax refunds.  Huntington has also suffered additional damages, such as the costs of investigation and recovery.

**FOURTH CAUSE OF ACTION:**
**CIVIL RICO, 18 U.S.C. § 1962(b), (c) & (d), and § 1964(c)  (ALL DEFENDANTS)**

(75)    Plaintiff incorporates the allegations in the preceding paragraphs as if fully rewritten herein.

(76)    Defendants engaged in a RICO conspiracy under 18 U.S.C. § 1962(b), (c) & (d) by acquiring stolen federal checks, forging endorsements on such checks, depositing the checks at Huntington, and then withdrawing the funds from those checks for their personal benefit.

13

(77)     Defendants GWS and Allen Pendergrass conducted, controlled, operated and managed a RICO enterprise that was engaged in the acquisition and deposit of stolen federal checks for the personal benefit of the Individual Defendants.

(78)     Defendants Joseph Gray, Clyde Parks, and Nathan Pendergrass assisted, conspired, participated and joined in the RICO conspiracy, by, among other things, depositing stolen federal checks, and/or receiving funds from the fraud.

(79)     Defendants comprise a RICO enterprise (the "GWS Enterprise") pursuant to 18 U.S.C. § 1961(4).  Defendant GWS is a limited liability company that is engaged in the illegal business of acquiring and depositing stolen federal checks.

(80)     The Individual Defendants have duties relating to the ongoing GWS Enterprise by, among other things, acquiring stolen federal checks, depositing such checks at Huntington without the authorization of the payee, forging the payee's endorsements on such checks, withdrawing funds from the GWS Account for their personal benefit, presenting fraudulent identification documents to Huntington, and transporting stolen checks, funds, or fraudulent identification across state lines.

(81)     Defendants have engaged in a pattern of racketeering activity, with multiple predicate acts in the last year.  These include:

> (a) Multiple acts of bank fraud, 18 U.S.C. § 1344, by acquiring and depositing stolen federal checks with forged endorsements in the GWS Account at Huntington, as set forth in **Exhibit A**;
>
> (b) Multiple violations of, 18 U.S.C. § 2314, which prohibits forging obligations of the U.S. Treasury, or transporting forged instrument across state lines, by

14

forging endorsements on federal checks from non-Ohio residents, as set forth in **Exhibit A**;

(c) Acts of identity theft, 18 U.S.C. § 1028A, by presenting to the Huntington the purported drivers' license, social security cards, and power of attorney for Matthew and "Joy" Handte, where such means of identification were forged, or Defendants lacked authorization to use such forms of identification; and

(d) Acts of wire fraud, 18 U.S.C. § 1343, by using email to transfer the forged or unauthorized identification documents for Matthew and "Joy" Handte.

(82)   As set forth in **Exhibit B**, Defendants subsequently withdrew funds from the GWS Account funds for their personal benefit, where such funds were derived from stolen federal checks.

(83)   As set forth in **Exhibit C**, Huntington has paid, and will pay, reclamation claims to the federal government. Huntington may be subject to additional reclamation claims by the federal government, or requests from payment, from the defrauded individuals.

(84)   Pursuant to 18 U.S.C. § 1964(c), Huntington seeks recovery and treble damages from Defendants for the injuries caused by the RICO conspiracy. Huntington has been, and will be injured by making reclamation payments to the federal government or payments to the individuals who should have received the tax refunds.

## FIFTH CAUSE OF ACTION:
## INJUNCTIVE RELIEF (ALL DEFENDANTS)

(85)   Plaintiff incorporates the allegations in the preceding paragraphs as if fully rewritten herein.

(86)   Huntington has demonstrated a likelihood of success on the merits for the causes of action outlined above.

15

4190328v8

(87)     Absent injunctive relief, Huntington will be irreparably harmed because, among other things, Defendants will likely hide or spend the remaining funds derived from the fraud.

(88)     Furthermore, upon information and belief, Defendant GWS is a company without significant assets, and the Individual Defendants are unlikely to have sufficient funds to repay Huntington's loss.  Accordingly, absent injunctive relief, Huntington will be irreparably harmed because it will be unable to recover funds to cover its loss.

(89)     The granting of injunctive relief will not cause substantial harm to others, as the federal government and defrauded taxpayers are entitled to a return of the funds derived from the stolen tax refund checks.

(90)     Preventing Defendants from hiding or spending the stolen assets will serve the public interest.

(91)     Huntington requests injunctive relief as follows:

(a)     Ordering that Defendants may not make any transactions in the GWS Account until further order of this Court;

(b)     Enjoining Defendants from spending, using, dissipating, or otherwise transferring funds withdrawn from the GWS Account as listed in Exhibit B (attached hereto);

(c)     Ordering the Defendants to immediately deposit with the Clerk of Court the withdrawals made from the GWS Account, such withdrawals listed in Exhibit B to this Complaint, until resolution of this action;

(d)     Ordering the Defendants to permanently refund to Huntington the withdrawals made from the GWS Account, pursuant to Huntington's right to revoke, rescind, or seek restitution for the fraudulent transactions.

16

4190328v8

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests the following relief:

(A)     Injunctive relief as set forth above;

(B)     Damages in an amount in excess of $75,000, to be determined at trial;

(C)     Treble damages pursuant to 18 U.S.C. § 1964(c);

(D)     Pre-judgment and post-judgment interest;

(E)     Attorneys' fees and costs in prosecuting this action; and

(F)     Any other relief this Court deems just and proper.

## JURY DEMAND

Plaintiff Huntington National Bank hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ John P. Gilligan by Albert G. Lin

John P. Gilligan, Trial Attorney (0024542)
Albert G. Lin  (0076888)
Ross R. Fulton (0082852)
ICE MILLER, LLP
250 West Street
Columbus, Ohio 43215
Tel:    (614) 462-2221
Fax:    (614) 222-3438
Email: john.gilligan@icemiller.com
          albert.lin@icemiller.com
          ross.fulton@icemiller.com
*Counsel for The Huntington National Bank*

4190328v8